UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN WALSH,<br><br>    Plaintiff,<br><br>v.<br><br>PFSWEB, INC., DAVID I. BEATSON, ROBERT FRANKFURT, G. MERCEDES DE LUCA, MONICA LUECHTEFELD, BENJAMIN ROSENZWEIG, and MICHAEL C. WILLOUGHBY,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT FOR:**<br><br>(1) Breach of Fiduciary Duties<br>(2) Aiding and Abetting Breach of Fiduciary Duties<br>(3) Violations of the Federal Securities Laws<br><br>JURY TRIAL DEMANDED |

Plaintiff Ryan Walsh ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against PFSweb, Inc. ("PFSweb" or the "Company") and the members of PFSweb's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") and breaches of fiduciary duty, in connection with the Board's attempt to sell PFSweb to GXO Logistics, Inc. ("GXO") (the "Proposed Transaction").

2. On September 13, 2023, PFSweb entered into an Agreement and Plan of Merger ("Merger Agreement") with GXO and GXO's wholly owned subsidiary Peregrine MergerSub I, Inc. ("Purchaser"). Pursuant to the terms of the Merger Agreement, GXO will acquire PFSweb in exchange for $7.50 in cash per share of PFSweb common stock, via a tender offer (the "Tender Offer"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on September 21, 2023.

3. On September 21, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC. Specifically, the Recommendation Statement, which recommends that PFSweb stockholders tender their shares in the Tender Offer, contains materially incomplete and misleading information, including with respect to PFSweb's financial projections and the most critical metric for PFSweb stockholders—PFSweb's unleveraged free cash flow ("UFCF") projections—relied upon by the Board's financial advisor, Raymond James & Associates, Inc. ("Raymond James") in connection with its fairness opinion, as well as, among other things: (i) the financial analyses that support the fairness opinion provided by Raymond James; (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest faced by Raymond James, the Company's additional advisor ComCap Holdings LLC ("ComCap"), a financial consultant of the Company, and Company insiders.

4. The failure to adequately disclose such material information constitutes a breach of the defendants' fiduciary duties and violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as PFSweb stockholders need such information in order to make a fully informed decision in connection with the Tender Offer.

5. The Tender Offer is currently scheduled to expire at midnight 12:00, New York City time, on October 20, 2023. It is imperative that such fiduciary duty and Exchange Act violations are promptly cured to enable Plaintiff and PFSweb's other shareholders to make an informed decision whether to tender their shares in the Tender Offer. Therefore, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such fiduciary duty and Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. PFSweb's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of PFSweb common stock.

10. Defendant PFSweb is a Delaware corporation, with its principal executive offices located at 4455 Regent Blvd, Irving, Texas 75063. PFSweb's shares trade on the Nasdaq Capital Market under the ticker symbol "PFSW."

11. Defendant David I. Beatson has been a director of the Company at all relevant times.

12. Defendant Robert Frankfurt has been a director of the Company at all relevant times.

13. Defendant G. Mercedes De Luca has been a director of the Company at all relevant times.

14. Defendant Monica Luechtefeld has been Chairperson of the Board and a director of the Company at all relevant times.

15. Defendant Benjamin Rosenzweig has been a director of the Company at all relevant times.

16. Defendant Michael C. Willoughby has been President, Chief Executive Officer, and a director of the Company at all relevant times.

17. Defendants identified in paragraphs 11-16 are collectively referred to herein as the "Board" or the "Individual Defendants."

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

18. By reason of the Individual Defendants' positions as officers and/or directors of the Company, they are in a fiduciary relationship with Plaintiff and the other public stockholders of PFSweb and owe them, as well as the Company, the duties of care, loyalty, and good faith.

19. In accordance with their duties of care, loyalty, and good faith, where the directors of a publicly traded corporation undertake a transaction that will result in either a change in

corporate control or a break-up of the corporation's assets, the directors must take all steps reasonably required to maximize the value stockholders will receive rather than use a change of control to benefit themselves, and if such transaction will result in a change of corporate control, the stockholders are entitled to receive a significant premium.  Moreover, the directors must take all steps reasonably required to disclose all material information concerning the proposed change of control to enable the stockholders to make an informed tender or appraisal decision.  To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that:

(a) favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(b) adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's stockholders; and/or

(c) will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public stockholders.

20. In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

(a) participating in any transaction where the Individual Defendants' loyalties are divided;

(b) participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public stockholders of the corporation; and

(c) unjustly enriching themselves at the expense of, or to the detriment of, the public stockholders.

21.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of care, loyalty, and good faith owed to Plaintiff and other public stockholders of PFSweb.

<b>SUBSTANTIVE ALLEGATIONS</b>

**Background of the Company**

22.     PFSweb is an eCommerce order fulfillment provider for consumer branded manufacturers, internet retailers and distributors. The Company provides services to support or improve the physical, post-click experience, such as logistics and fulfillment, transportation management, customer care, and order-to-cash services including distributed order orchestration and payment services. The services the Company offers are primarily organized into the categories of Order Fulfillment, Fulfillment-as-a-Service, Order to Cash (Order Management as a Service), and Customer Care. The Order Fulfillment category comprises the distribution operations that streamline clients' supply chain process to offer a flexible fulfillment model. The Company's Fulfillment-as-a-Service category includes the Company's cloud-based RetailConnect Store Edition, which is designed to streamline the pick/pack/ship operation within a retail store. PFSweb's Order to Cash service provides clients with distributed order orchestration and payment processing. The Customer Care segment is focused on providing essential services such as order entry, returns authorization, product inquiry and order tracking.

**The Proposed Transaction**

23.     On September 14, 2023, PFSweb announced that it had entered into the Proposed Transaction, stating, in relevant part:

> IRVING, Texas – September 14, 2023 – PFSweb, Inc. (NASDAQ: PFSW) (the "Company" or "PFSweb") has entered into an Agreement and Plan of Merger to be

acquired by GXO Logistics, Inc. (NYSE: GXO) ("GXO"), the world's largest pure-play contract logistics provider, for an equity value of approximately $181 million. The transaction is expected to close in the fourth quarter of 2023.

The merger agreement provides for GXO, through a subsidiary, to commence a tender offer to acquire all outstanding shares of PFSweb at $7.50 per share in cash. The consummation of the tender offer will be subject to certain conditions, including the tender of at least a majority of the outstanding shares of PFSweb common stock, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary closing conditions.

Upon completion of the tender offer, GXO will acquire all PFSweb shares not acquired in the tender through a second-step merger. Upon closing the transaction, PFSweb will be removed from the Nasdaq Stock Exchange, and PFS will operate as a division within GXO.

**Transaction Highlights**

The proposed transaction will enable PFSweb to benefit from GXO's scale, industry-leading technology and significant capital resources, while adding PFSweb's expertise in direct-to-consumer eCommerce fulfillment for premium brands to GXO following the consummation of the acquisition. Some additional transaction highlights include:

- *Enhanced Fulfillment Offerings for Premier Brands:* Providing premium order fulfillment and support services to both existing PFS clients and GXO eCommerce-centric clients.

- *Complementary Distribution Center Network:* PFSweb's multi-node fulfillment presence in North America serves as a strategic complement to GXO's expansive global fulfillment network across the U.S., Europe and the United Kingdom.

"Joining GXO represents a strong strategic next step for PFS, as well as a valuable conclusion to our strategic alternatives process," said Mike Willoughby, CEO of PFSweb. "Since completing the sale of our LiveArea business to Merkle, we have worked diligently to strengthen PFS' operational efficiency and multi-node fulfillment network. This transaction is a testament to the success of these efforts, as well as the world-class quality of our team and client base and we believe PFS will be a fruitful addition to GXO's extensive platform."

Malcolm Wilson, CEO of GXO, commented: "PFS's platform, vertical expertise and geographic concentration make it an ideal fit for GXO. Like GXO, the PFS team has established themselves as a trusted partner for some of the world's most iconic brands and this combination will complement and expand GXO's capabilities for new and existing customers. We are very excited to bring the PFS

team onboard and look forward to driving additional GXO shareholder value through disciplined capital allocation and continued investment in high growth opportunities."

Monica Luechtefeld, chair of PFSweb's board of directors, commented: "As we have communicated since 2021, the key objectives of our strategic alternatives process were to position PFS for growth, enhance our team's career opportunities and maximize value for our shareholders. We believe the proposed acquisition by GXO fulfills each of these goals. The attractive per-share premium implied by the transaction, coupled with the $4.50 special dividend we distributed in December 2022, represents the considerable value we have delivered to PFSweb investors during this process. We appreciate our shareholders' continued support as we work towards closing the transaction."

Raymond James & Associates, Inc. acted as exclusive financial advisor to PFSweb in the transaction. FisherBroyles, LLP acted as legal counsel to PFSweb in the transaction.

**The Materially Incomplete and Misleading Recommendation Statement**

24. On September 21, 2023, the Board caused to be filed a materially incomplete and misleading Recommendation Statement with the SEC. The Recommendation Statement, which recommends that PFSweb stockholders tender their shares in the Tender Offer, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning, among other things: (i) the Company's financial projections, including the UFCFs relied upon by the Board's financial advisor, Raymond James, in connection with its fairness opinion; (ii) the financial analyses that support the fairness opinion provided by Raymond James; (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by Raymond James, ComCap, a financial consultant of the Company, and Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Projections*

25. The Recommendation Statement fails to disclose material information concerning the financial projections for the Company.

26.     Critically, the Recommendation Statement fails to disclose the UFCFs that PFSweb was forecasted to generate for the years ending December 31, 2023 through 2025, relied upon by the Board's financial advisor in connection with its discounted cash flow analysis ("DCF"). A DCF is considered the premier and most reliable valuation tool that a banker can employ in a merger context, because management's own internal projections (typically cash flows or unlevered free cash flows) are the core component of the analysis.[1] The UFCFs formed the bases of the DCF of PFSweb performed by Raymond James in connection with its fairness opinion. *See* Recommendation Statement at 33 ("Raymond James analyzed the discounted present value of the Company's projected free cash flows for the years ending December 31, 2023 through 2025 on a standalone basis using both a terminal multiple method and a perpetuity growth method. Raymond James used unleveraged free cash flows, defined as earnings before interest, after taxes, plus depreciation, plus amortization, less capital expenditures, less investment in working capital.").

27.     The Recommendation Statement includes a summary of certain of PFSweb management's financial projections for fiscal years 2023 through 2025. *See id.* at 28. Yet, this summary fails to include the most important projections – the Company's UFCFs. The Recommendation Statement further fails to disclose all underlying line items used to calculate the Company's UFCFs. The omission of the UFCFs and underlying line items renders the projections on page 28 and the summary of Raymond James' *DCF* of PFSweb set forth on pages 33-34 of the Recommendation Statement incomplete and misleading, because the Recommendation Statement provides a materially incomplete and misleading valuation picture of the Company.

*Material Misrepresentations and/or Omissions Concerning Raymond James' Financial Analyses*

---

[1] *See, e.g., Onti, Inc. v. Integra Bank*, 751 A.2d 904, 916 n.53 (Del. Ch. 1999) (indicating that the Delaware Chancery Court has employed the DCF method as a method of valuation and that experts consider it to be the preeminent method of valuation); *Neal v. Alabama By-Products Corp.,* C.A. No. 8282, 1990 Del. Ch. LEXIS 127, at *20 (Del. Ch. Aug. 1, 1990) (noting that experts consider the DCF method to be the preeminent method of valuation).

28. The Recommendation Statement fails to disclose material information concerning Raymond James' financial analyses.

29. With respect to Raymond James' *DCF*, in addition to the UFCFs used in the analysis, the Recommendation Statement fails to disclose a quantification of: (i) the Company's calendar year 2025 EBITDA used to calculate the terminal values for the Company; (ii) the terminal values for the Company; (iii) the Company's federal net operating losses; and (iv) the inputs and assumptions underlying the discount rate range of 10.7% to 14.7%.

30. With respect to Raymond James' *Selected Companies Analysis* and *Selected Transaction Analysis*, the Recommendation Statement fails to disclose the individual financial metrics for each of the companies and transactions analyzed by Raymond James, respectively.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

31. The Recommendation Statement fails to disclose material information concerning the background leading to the Proposed Transaction.

32. For example, the Recommendation Statement fails to disclose: (i) the number of confidentiality agreements the Company executed with potential bidders in connection with the sale process; and (ii) whether any of the confidentiality agreements include "don't-ask, don't-waive" standstill provisions that are still in effect and presently precluding any interested party from submitting a topping bid for the Company. *See e.g., Id.* at 19 (summarizing meetings at which Company management, Raymond James and interested parties discussed "waiver of certain standstill obligations"). To the extent that these confidentiality agreements include "don't ask, don't waive" standstill restrictions, they must be waived.

33. Additionally, the Recommendation Statement fails to disclose the terms of all bids the Company received from interested parties throughout the sale process.

*Material Misrepresentations and/or Omissions Concerning Raymond James', the Company's Additional Advisors and Company Insiders' Potential Conflicts of Interest*

34. The Recommendation Statement fails to disclose material information concerning potential conflicts of interest faced by Raymond James, ComCap and a financial consultant of the Company.

35. Specifically, the Recommendation Statement fails to disclose whether Raymond James has performed any services for GXO or its affiliates in the two years prior to rendering its fairness opinion and if so, the amount of compensation received in connection with such services.

36. Additionally, the Recommendation Statement fails to disclose the terms of ComCap's engagement with the Company, including: (i) the details of the compensation ComCap received, or is expected to receive, in connection with the Proposed Transaction; and (ii) the details of any services ComCap provided to the Company, GXO, or their respective affiliates in the prior two years, and any related compensation received by ComCap.

37. Moreover, the Recommendation Statement fails to disclose: (i) the identity of the "financial consultant of the Company" that Company management and Raymond James met with to discuss "process, due diligence, standstill requirements and questions concerning the Company" (*see id.* at 20); (ii) the details of the compensation the financial consultant received, or is expected to receive, in connection with the Proposed Transaction; and (iii) the details of any services the financial consultant provided to the Company, GXO, or their respective affiliates in the prior two years, and any related compensation received by the financial consultant.

38. The Recommendation Statement also fails to disclose material information concerning Company insiders' potential conflicts of interest.

39. Specifically, the Recommendation Statement fails to disclose whether any of GXO's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation. The Recommendation Statement similarly fails to disclose the details of any discussions or negotiations concerning management participation in the combined company.

40. In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information," "Opinion of PFSweb's Financial Advisor," "Background of the Offer and the Merger," and "Other Arrangements" sections of the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other stockholders of PFSweb will be unable to make a sufficiently informed decision in connection with the Tender Offer and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against the Individual Defendants for Breach of Fiduciary Duties**

41. Plaintiff repeats and realleges each and every allegation set forth herein.

42. The Individual Defendants have breached their fiduciary duties to Plaintiff and the other stockholders of PFSweb and have acted to put their personal interests ahead of the interests of the Company's public stockholders.

43. By the acts, transactions, and courses of conduct alleged herein, defendants, individually and acting as part of a common plan, are attempting to unfairly deprive Plaintiff and the other stockholders of PFSweb of the true value of their investment in PFSweb.

44. Further, the Individual Defendants disseminated materially misleading and incomplete information to the Company's public stockholders. The Individual Defendants have an obligation to be complete and accurate in their disclosures.

45. The Recommendation Statement fails to disclose material information, including financial information and information necessary to prevent the statements contained therein from being misleading. The misleading omissions and disclosures by defendants concerning the financial projections for the Company, information and analyses presented to and considered by the Board and its advisors, the background of the Proposed Transaction, and potential conflicts of interested by the Company's advisors and insiders affirm the inadequacy of disclosures to the Company's stockholders. Defendants' failure to provide full and fair disclosure strips Plaintiff and the other stockholders of PFSweb of their ability to make an informed decision with respect to the Proposed Transaction, and damages them.

46. By reason of the foregoing, the Individual Defendants have breached their fiduciary duties of, *inter alia*, good faith, loyalty, fair dealing, and due care to Plaintiff and the other stockholders of PFSweb.

47. As such, unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to Plaintiff and the other stockholders of PFSweb.

48. Plaintiff has no adequate remedy at law.

## COUNT II

### Claim Against PFSweb for Aiding and Abetting

49. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

50. Defendant PFSweb knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

51. As a result of this conduct, Plaintiff and the other stockholders of PFSweb have been and will be damaged in that they have been and will be prevented from obtaining a fair value for PFSweb.

52. Plaintiff has no adequate remedy at law.

## COUNT III

### Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9 Promulgated Thereunder

53. Plaintiff repeats all previous allegations as if set forth in full.

54. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting PFSweb stockholders to tender their shares in the Tender Offer.

55. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

56. Section 14(d)(4) of the Exchange Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

57. SEC Rule 14d-9 sets forth, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

58. Item 8 of Schedule 14D-9 requires a company's directors to "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

59. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

60. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

61. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of PFSweb, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT IV

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

62. Plaintiff repeats all previous allegations as if set forth in full.

63. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any

solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

64. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement to PFSweb stockholders in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. Specifically, the Recommendation Statement misrepresented and/or omitted material facts concerning the financial projections for the Company, Raymond James' financial analyses, the background of the Proposed Transaction, and potential conflicts of interest faced by Raymond James, ComCap, the Company's financial consultant, and Company insiders.

65. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer.

66. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

## COUNT V

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

67. Plaintiff repeats all previous allegations as if set forth in full.

68. The Individual Defendants acted as controlling persons of PFSweb within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of PFSweb, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

69. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Recommendation Statement.

71. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

72. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

73. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), Section 14(d) and

SEC Rule 14d-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, PFSweb stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of PFSweb, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in PFSweb with them from proceeding with, consummating, or closing the Proposed Transaction, including the expiration of the Tender Offer, unless and until defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Recommendation Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  October 2, 2023        **ACOCELLI LAW, PLLC**

By   /s/ *Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*